May it please the Court, Thomas Ellington on behalf of Petitioner Jinsuo Gong. Your Honor, I'd like to reserve a couple minutes, if I can, for rebuttal. Try to keep track of your honor. I will, Your Honor. Thank you. Okay, the most significant issue and most interesting issue from this case, from my perspective, is two reasons. We have, first of all, we have a credibility determination made by the immigration judge and the Board of Immigration Appeals that with regards to the claim of persecution to the eminent domain, my client, they believe it was truthful what he testified to. Yet they still said it didn't rise to the level of asylum and didn't grant him relief. What's also interesting about this case is that the Board of Immigration Appeals made an alternative finding that even if he could have shown asylum as entitled to that relief, it was rebutted. His past persecution was rebutted. Now that's unusual because I seldom see that type of angle that they take in an alternative determination. The Board of Immigration Appeals was saying that he did not, he was not entitled. He had changed circumstances because the transaction to which the eminent domain occurred was over. Now, if courts are going to go along and do that and say that, well, the event is over, then every single asylum claim and every claim for asylum made on U.S. soil, you can make that argument there. Well, what must the government prove to show a fundamental change in country circumstances? You know, I don't see a lot of those cases, but it's usually something like a change of regime, that type of thing. That's my impression I get. Your impression? Yes, I don't know what they have to show, but I don't think it's this because it's whipsawing. It's bootstrapping to the very reason he's claiming asylum. He's saying, I was persecuted. Oh, well, it's over. I don't think it can be that, Your Honor. I don't think you can go in and say that your circumstances changed because your persecution is over. That's what it's essentially saying. Sure, but, I mean, we deal with authorities here, and what authority can you give me on what we look at for what amounts to a change in country circumstances? It looks like the regulation says it's a change in fundamental change in circumstances. The case law has interpreted that to be apparently change in country conditions, and I'm trying to determine in this case, you know, what happened here. The government asserts there was. Why do you say there wasn't, and what do you think it should mean? I would say there wasn't because of the fact that if we're going to look at his testimony as credible, he's saying that they've been periodically going back to my wife and asking, where's your husband who's been in the United States? And when he comes back, tell us. So if he's credible on that testimony, then I don't think that's a changed circumstance. I don't think you can, and to the point where I don't think you can say that your persecution is over, so the circumstance has changed. And the second point they also raise is he has a passport. He has a passport, so obviously the government's not looking for him because he could obtain a passport. And they actually cite a case that was my very first oral argument. I was looking through. It's the Pong Hightow case that was done before a panel in this very courtroom back four years ago. It's at page 31 of the government's brief, and that's one case where in that particular case they said the issuance of a Chinese passport shows essentially that the government must not have been looking for this person. That was in 1985. I can understand back in 1985 in China the issuance of a passport was probably pretty significant, but I also – there's also several cases in this circuit that say that the issuance of a passport is essentially invariant because a government that wants a troublemaker out of the country could very well issue them the passport. I'm going to – I found some case law on that, Your Honor. I'll file a FRAP 28J letter to direct the Court to the – I have the citations on this, but I have three cases that basically say passport factors, it's not – it's a hard one to look at to say that because someone has a passport, then they must not be – the government must not be after them. You know, you're supposed to submit the cases before the argument if you know them. I went and looked, Your Honor. I was looking last night and thinking about this and did some more research. But, yeah, I have the cases, and, you know, to me, the passport argument is invariant. And even if we don't have the cases, we can think about – we can – I think the point is this case has been pending for quite a while. It would have been very helpful to get that authority that you – Yes, Your Honor. – cases before. Mm-hmm. Not even – you don't even have them now. You're going to submit them. No, no. I do have them now. I have the citations right now. And the – well, besides that passport issue, on the third issue, they also say that the country condition report essentially rebuts Mr. Gong's claim or it supports the claim that there's a changed circumstance. And because the country condition report mentions that there's a lot of public protests going on in China on this eminent domain issue, but the BIA says, well, the State Department's country condition report, it doesn't say that these leaders – yeah, it looks like they get persecuted, but it doesn't mention anything about that they're being persecuted. Some of the leaders are getting prosecuted, but it doesn't seem like they're getting persecuted because it doesn't say that they are in the country condition report. Now, the country condition report from the State Department just provides an overall guideline and just general view of China or whatever country that the Department of State has the report on. Now, I'm saying that just because it fails to mention that people in these public protest scenarios for the eminent domain are not getting persecuted, that doesn't mean it doesn't happen. Once again, we revert back to what's more important is the credible testimony of Mr. Gong on this issue. You're relying on the fact that his wife says – is it his wife or his mother this time? He testified that his wife – His wife reported that the police are still looking for him. They're still looking for him. And that's your basis for saying that he still faces persecution? Well, that's my basis to say that – to rebut – well, that's a presumption of future persecution. The BIA went in and did the unusual thing to say, well, even if he had past persecution, the presumption's rebutted. Isn't that unusual? In fact, it's good that it does it. We don't have to keep bouncing back and forth. It's nice that they settle all the issues the first time. Yes, Your Honor, but maybe so. But the cases I see, they usually just get to the threshold issue and then they – We see a lot of cases, too. Yes, Your Honor. And I'm telling you this is a good practice. I agree. Yes, good. All right, so we're over that. Now, on the other issue, your imputed political opinion is because he wanted more money for the eminent domain case. Well, the imputed political opinion is he was protesting because he wasn't getting enough money. And that was his political opinion? No, no, no. He goes and complains to Beijing. He goes over their heads. He's from Tianjin. He goes to Beijing. Suddenly, when he tells the Beijing government, hey, something not fair is going on in Tianjin, he goes back. Four days later, they come in and demolish the whole – his house, drag him out, give him three minutes to leave, and they're all curious, what did you tell Beijing? So – Is this the mafia group that dragged him out? Mafia group. He was detained for seven days. He's released, and then he tries to go back to the local government, Tianjin government, to make a complaint. He says he leaves, and then he's accosted by a van with people he suspects are mafioso types. He can't really identify them. That's afterwards. This is all because he wanted more money for his property, right? He wanted more money. But the imputed political opinion is the government – are they suspecting him of being a whistleblower? What are you doing? Why are you being a troublemaker to our local government? He's going out to Beijing. He comes back. They're asking him, what are you telling our authorities or the higher-ups on your hire petition? Are you – I mean, we also – I'd point out we lose some of the testimony that he – when he went to Beijing on what he – we don't know what he said exactly, but the – But you're saying mafioso type, not government. He's not sure. He gets accosted afterwards. He's saying that they have a tight relationship. I think they're mafioso type with the government to go tell me to back off. All right. That's – we'll give you time for rebuttal. All right. Thank you, Your Honor. Thank you. May it please the Court, Brendan Hogan for the government. In this case, the petition for you should be denied first and foremost because, as already discussed, the petitioner did not – excuse me, the petitioner's well-founded fear of future persecution was rebutted by the government. Why is it rebutted if he has testimony that's not questioned that his wife tells him the government's still looking for him? For a number of reasons, Your Honor. It's actually very telling that the government is still speaking to his wife because his wife was actually arrested along with him, yet she has not been harmed since he's departed China, meaning that the government is very unconcerned with the family's past authority. If they're not concerned with it, why are they still looking for him? But they're not – they might be checking in on him, Your Honor, but they're not harming him. They're not – or they're not harming the family, Your Honor. What reason would they be checking in on him? Because of when he was released, part of his release was a promise to check in with the government over this economic dispute. But again – Isn't the economic dispute over by now? It is, Your Honor. It's telling – also telling that he was promised 50,000 yuan and he was paid 50,000 yuan. Also, he was – when he was throwing his testimony, he claimed that he could not return to China because they would view him as a saboteur trying to interfere with the Olympic Games in 2008. The Olympics are over. There's no reason for the government to think that he would interfere with the Games. Well, if there's no reason for them to think he'd interfere, what's the reason for them to be looking for him years later? It's unknown, Your Honor. It just seems that they just want him to check in with the authorities. Well, you're the ones that have to rebut the presumption. That is true, Your Honor, but it's also telling that he was able to obtain a passport at the same time that he claims that he was under such strict surveillance that he couldn't even leave his own municipality. He was able to travel all the way to Beijing, was given a passport, departed in February 2004 for a few weeks, reenters China, spends time with his family again for four weeks, and then departs again, all without incident, at the same time that the authorities are allegedly looking for him. What are the dates? Does the record show when they were looking for him? Yes, Your Honor. He left China. He was originally asked to check in in November of 2003. That's when he was released from detention. He said that he ceased checking in with the authorities in February of 2004. A few weeks later, he then leaves China. He comes back to China at the end of February of 2004, stays for a number of weeks with his mother, presumably openly, and then in March of 2004, he leaves again. And that set pages 193 to 197, 319, and 315 to 316 of the record. And when is the testimony or the evidence from the wife that they're still looking for him? When did it – what's the date of her letter? When he testified in 2009 at his immigration proceedings, he informed the immigration judge that the authorities were still searching for him five years later or still checking in with the wife about him five years later, even though he had been openly entering and departing China in 2004 at a time when they were also allegedly checking in on him. And the BIA or the IJ never expressed any doubt as to the truthfulness of that testimony? In this case, the immigration judge originally made an adverse credibility determination. He found it implausible that he would be traveling to and from China in such a manner, but the board declined to affirm that finding. So there is no adverse credibility determination for this court's review. You know, there's something to your argument that you don't make any allowance for the inefficiency of government. The Chinese government is as inefficient as any other government. They don't stop all the eyes. They let people go. The fact they didn't catch him when he came back doesn't seem to me to say very much. But if they're so inefficient that they can't catch him, Your Honor, they're so inefficient that they're unlikely to harm him in that case. Let me ask you. Did the government argue to the IJ or the BIA that a fundamental change in circumstances rebutted the presumption of a well-founded fear?  I don't recall specifically, but I do know that the immigration judge is allowed to make such a finding on his own in the first instance. So what is required to show a fundamental or show a change in circumstances? Excuse me. The governing regulation is 1208.13 subsection B01, and it's an enumerated list of factors, but it can include changed circumstances, meaning conditions in the country have changed. Conditions relating to the individual as opposed to general conditions? Yes, it has to. This Court has said it has to be tailored to the individual. And is that the same as showing that Gong's fear is no longer well-founded? By showing conditions have changed specifically to his case, they have rebutted the presumption that he has a well-founded fear, Your Honor. So isn't this still a communist dictatorship? I'm sorry, Your Honor. Could you repeat the question? Is China not a communist dictatorship? At this time, the Communist Party is in charge of China, I guess, Your Honor. It's a dictatorship, is it not? It is a dictatorship, is it not? According to the country report, it's an authoritarian country, but I can't speak to the exact structure of the government, Your Honor. You can't what? I can't speak to the exact structure of the government, Your Honor. What structure? What structure can't you speak to? I don't understand you. What structure do you not speak to? I'm sorry. Could you repeat it, Your Honor? You said the country is a communist dictatorship. I did have some information about what? The record shows that the Communist Party is in charge of China. As for how that government is structured, that's not in the record, Your Honor. But you don't know that as a matter of common knowledge? Are you standing there and saying you don't know it's a dictatorship? Don't you look at the papers? A dictatorship implies one person is in power, Your Honor. It doesn't seem that one sole person is in power of China at this time. What do you call it? What kind of government is it? It seems to be not a democracy. But as for the exact structure, I can't speak to that. You don't know the word for it? I'm sorry. Could you repeat the question? You don't know the word for this kind of government? According to the country report, it's not a democracy. You're at a loss for words. I apologize, Your Honor. Could you repeat that one more time? You are at a loss to describe it. Is that right? You do not know how to describe the government of China, and yet you come here and argue a case about supporting a man from China. Well, go ahead. We wish there were a little more general education. Which of the findings by the BIA here show that there was any sort of change in circumstances that occurred? Can you just point them out to me? Again, that the Olympics were concluded, so therefore they would not view him as a saboteur anymore, as he said. Despite their irritability with him disputing about how much the fair market value of his property was, they did, in fact, pay him the money after his release. That's no change from when he left. I mean, that was all that all, I mean, happened. So I'm just trying to figure out what's the change since he's been gone. Well, I guess also a change as well would be that he was able to depart and reenter China at will. If he was so fearful of being harmed, if he departed the country, he had found a safe haven, but he decided to go back under his own name. I guess that's what I'm trying to figure out. Is any more required than that, or you think that's sufficient? In this specific case, in the context of this case only, that is sufficient. Do you have any case law or anything to look at to help me figure that out? Just the cases that were cited at pages 31 and 32 of our brief, one of which was an unpublished decision, and the other one was a decision from 1985. I believe it was Espinoza. Does the panel have any other questions? Thank you, Kevin. Thank you. We'll give you a minute or two for that. Judge Noonan and I can answer the question. China is a dictatorship, authoritarian. It's not dictatorship in the sense that there's a military general in charge. We just look at this case. Mr. Gong got detained. They beat a confession out of him. The confession that he signed and subscribed to said that he essentially disturbed the civil order, and because of that criminal confession that he presented to the IJ to show that this is what they beat out of me, the BIA and IJ now took that and said, oh, well, you must be a legitimate criminal. The due process he had was a beating from the police. He didn't get any due process. I think that's a characteristic of a dictatorship. And he's now getting they're now saying that your persecution is over and you're a criminal. You admitted to it. So when you go back to China, you get what you deserve because you were supposed to check in with the police. So I'll leave it at that, and I appreciate the panel. Let me just say before, it seems that this hinges a little bit on the fact that he was able to leave with the passport and then also return to the country and whether or not that supports my preponderance of the evidence that there's been a fundamental change in circumstances such that the applicant no longer has a well-founded fear of persecution in the applicant's country of nationality. That's the actual language we have to follow. Why doesn't that support fundamental changes required by the statute or this regulation? That's right. He went back, I believe, February. He went back in a short time span, and the reason he went back to the immigration judge identified he could have been courageous. His mother was very sick, and he came back out. There's a lot of speculative aspects to say that, well, because he can freely travel, he must have no fear of future persecution because the case you're building, I mean, is that, you know, it was so bad, he had to leave and escape because he had basically challenged the government by challenging the amount that they gave him for his house in order to tear it down for the Olympics. You're saying that his actions then resulted in these people, some of them perhaps affiliated with the government, some of them somewhat maybe perhaps affiliated with the government, and that it was so bad that he had to leave and that he fears going back because he could get persecuted when he gets back. The government is saying, well, no, there's been a change as required under the reg. If we just accept everything else but just looking at this one issue on the passport and that he was issued a passport, he was able to leave, and then, in fact, he went back, and despite that they were looking for him or purportedly by his wife were looking for him, he was able to go back and then return. To me, that seems like the critical point where we're at. So why isn't that enough to overcome his fear? This is speculative, but he got a passport. He got a U.S. visa. He came back. It may have been a multiple-entry visa. If he already has the passport the first time, he's taking a risk. He can leave. To Judge Noonan's point, we're assuming China's very efficient, and maybe they do this all the time. So they do this so much that they're not reporting every single thing. This may just be petty, but to us it's egregious. I do not know what his fear is. It's subjective. May I ask you one question? When he was originally detained by the local civil authorities, it was for 15 days. Was he beaten during that 15 days? I believe it was supposed to be 15 days, but he got out after seven. He was beaten pretty severely. They smashed his head. Was that beaten while being held or on the way home from being held? No, he was detained. He was held. He was beaten by authorities. There's no doubt about that. The mafioso types was after he was released, he still went back and said to the Tianjin local government, said this is unfair. When he left again from that, when he was released, that appeal, he got accosted on the road. That's a totally separate incident. But he was beaten. The report of the IJ doesn't separate those two beatings, but all right. Thank you, Your Honor. Thank you. Case disargued will be submitted. Second case for oral argument is Williams v. Swarthout.
judges: REINHARDT, NOONAN, MURGUIA